## Case No. 2,746.

### The CITY OF FREMONT.

[2 Biss. 415; [1] 13 Int. Rev. Rec. 149; 3 Chi. Leg. News, 233.]

District Court, E. D. Wisconsin. Jan. Term, 1871.

SEAMEN'S WAGES—MASTER'S DUTY AS TO SHIPPING ARTICLES.

1. A seaman on a lake vessel, having shipped under a verbal agreement without signing shipping articles, may leave the vessel at any time.

[Cited in Graham v. The Exporter, Case No. 5,667; The Pacific, 23 Fed. 155.]

2. If he draws the wages promised, not demanding more, he cannot recover a larger amount under the act of July 20, 1840 [5 Stat. 394].

3. Duty of master as to shipping articles stated.

In admiralty. This was a libel by Robert Brittain, a seaman, for additional wages. The vessel libelled was employed in trade between the port of Sarnia, in Canada, and the city of Chicago, in connection with the Grand Trunk Railroad. On the twenty-fourth day of May, 1870, at Chicago, the libellant shipped on board as first mate on verbal contract with the master, at seventy dollars per month, no shipping articles being signed. Libellant continued in service on board, drawing his wages from time to time as he wanted money, until the thirty-first day of October following, when he left the vessel at Milwaukee, having drawn his full wages at the rate of seventy dollars per month, and not making demand for any larger sum. The vessel was on a trip from Sarnia to Chicago when libellant left, having notice to return on board, as the vessel was ready to put out; he declined or neglected to appear, and the vessel had to be navigated to Chicago without a first mate, where the master procured another in his place.

Emmons & Hamilton, for libellant.
James MacAlister, for respondent.

MILLER, District Judge. It is contended on behalf of the libellant that not having signed shipping articles in a printed or written contract, he was at liberty under the law to leave the vessel at pleasure, and demand the highest rate of wages.

By the act for the government and regulation of seamen in the merchant service, approved July 20, 1790 (1 Stat. 131), every master of "any ship or vessel of the burthen of fifty tons or upwards, bound from a port in one state to a port in any other than an adjoining state, shall, before he proceed on such voyage, make an agreement in writing or in print with every seaman or mariner on board such ship or vessel," etc. By the tenth article of the act approved July 20, 1840 (5 Stat. 394), in addition to the several acts regulating the shipment and discharge of seamen, "All

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

shipments of seamen made contrary to the provisions of this and other acts of congress shall be void, and any seaman so shipped may leave the service at any time and demand the highest rate of wages paid to any seaman shipped for the voyage, or the sum agreed to be given him at his shipment." The general scope of this act relates to vessels bound on a foreign voyage, but the tenth article above quoted extends to and includes all shipments of seamen. Even if these statutory provisions did not embrace seamen shipped on vessels employed in the lake trade, they should be enforced by the courts as correct principles of maritime law. This vessel, at the time of the shipment and service of the libellant, was employed in trade with a foreign port. Libellant had drawn his full wages promised him at the time of his shipment, and left at his pleasure. He took advantage of the right extended to him under the act of 1840. Before leaving the service he had not demanded or given notice that he claimed a larger amount. Libellant had a lawful right to leave the service at Milwaukee, and having received the full wages up to that time, as promised him at his shipment, he should not maintain this libel for a larger amount, if he had proven himself entitled to it, which he did not. If the master was put to inconvenience by libellant's leaving the service, it was his own fault in not complying with the law. It is the duty of every master navigating the lakes to have his seamen sign shipping articles, specifying the ports or places to which his vessel trades, and the trip or season for which they are shipped, and the wages to be paid. In cases of such neglect, every legal intendment will be taken against the master and owners. It is not the fault of the seaman that shipping articles are not signed, but of the master.

It does not appear that libellant is legally entitled to any larger amount of wages than he received before leaving the service; and this libel must be dismissed.