## THE PACIFIC.[1]

*(District Court, W. D. Pennsylvania.  February 20, 1885.)*

1. SEAMEN'S WAGES—LEAVING VESSEL.
     A seaman was hired without signing shipping articles on a vessel about to proceed on a voyage from a port in one state to a port in a state not adjoining. *Held*, that he could leave the vessel at any place.

2. SAME—REV. ST. §§ 4520, 4523.
     Sections 4520 and 4523 of the Revised Statutes of the United States *held* to apply to the hiring of seamen on vessels navigating rivers of the interior states.

3. SAME—WAGES NOT FORFEITED.
     A seaman left a vessel at a place where a substitute could easily be obtained, and the boat suffered no detriment by reason of his refusal to work. *Held*, not to be such misconduct as would forfeit his wages for the time he performed his duty.

In Admiralty.

On March 14, 1884, Taylor Harlan, the libelant in this case, was hired by the mate of the steam tow-boat Pacific as a deck hand on said tow-boat while she was lying at the port of Pittsburgh, Pennsylvania, without any shipping articles being signed.  The tow-boat Pacific was upwards of 50 tons in burden, and was engaged in navigating the Monongahela and Ohio rivers.  At the time of the hiring of libelant nothing was said about the duration of the voyage of the Pacific or the port to which she intended going, but it was understood that Harlan should receive the same rate of pay that other deck hands were getting for similar services.  The Pacific made up a tow of coal barges and proceeded down the river to Louisville, Kentucky, where she left her loaded barges, and the same day started back for her home port with three empties.  On the twenty-second day of March, 1884, the Pacific arrived at a coaling station called Ludlow, a small town three miles below Covington.  Here the mate ordered the watch on deck to carry coal from a flat into the tow-boat.  Harlan, the libelant, having, as he testified, sprained his wrist by a fall some weeks previously, refused to obey the mate's order, and said he was going to quit work.  The mate referred him to the captain, who told him unless he performed his duty he would forfeit his wages for the entire trip, and on his continued refusal to work ordered him ashore, and threatened to arrest him if he did not leave the boat.  The libelant went ashore, and on his arrival at Pittsburgh libeled the Pacific for his wages for the eight days that he had worked on the steam tow-boat.  It was admitted that the rate of wages for that trip for deck hands was $35 a month.

*Albert York Smith,* for libelant, cites, *inter alia:*

Sec. 4520, Rev. St. Every master of any vessel of the burden of 50 tons or upwards, bound from a port in one state to a port in any other than an

adjoining state, except vessels of the burden of 75 tons or upward, bound from a port on the Atlantic to a port on the Pacific, or *vice versa*, shall, before he proceeds on such voyage, make an agreement in writing or in print, with every seaman on board such vessel except such as shall be apprentice or servant to himself or owners, declaring the voyage or term of time for which such seaman shall be shipped.

Sec. 4523. All shipments of seamen made contrary to the provisions of any act of congress shall be void; and any seaman so shipped may leave the service at any time, and shall be entitled to recover the highest rate of wages of the port from which the seaman was shipped, or the sum agreed to be given him at his shipment.

When seamen are shipped without signing articles they may leave the service at any time. Desty, Shipp. & Adm. § 184; *Graham* v. *The Exporter*, 21 Int. Rev. Rec. 110; *The Fremont*, 10 Amer. Law Reg. (N. S.) 340.

Every trivial act of disobedience will not work a forfeiture of wages.

Leaving in a place where the master could easily obtain a substitute is not desertion. Desty, Shipp. & Adm. §§ 181, 184; *The Crusader*, 1 Ware, 437.

*Geo. C. Wilson*, for respondent.

ACHESON, J. I do not see that it can be denied that this case comes within sections 4520 and 4523 of the Revised Statutes. *Graham* v. *The Exporter*, 21 Int. Rev. Rec. 110; *The City of Fremont*, 2 Biss. 415. Hence the libelant had the right to quit the boat without being chargeable with desertion. Id.; *The Crusader*, 1 Ware, 438. Having thus a right to leave the vessel, he is entitled to wages during the time of his actual service, unless he forfeited them by reason of his alleged misconduct. Now he swears that he had sprained his wrist, and that this was his reason for declining to aid in coaling the boat. He should have made this explanation to the mate at the time; but, still, I cannot say his failure to do so should deprive him of his wages. He did state the fact to Capt. Gould before he left finally. The boat suffered no detriment by reason of the libelant's refusal to assist the other hands on this occasion, or by his leaving the vessel at Ludlow; and, upon the whole, I do not perceive upon what just ground his claim for wages can be denied.

Let a decree in favor of the libelant be drawn.