Melba GOODMAN, Plaintiff,

v.

The BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT 524, and James D. Koeller, President, Moraine Valley Community College, Defendants.

No. 80 C 1870.

United States District Court, N. D. Illinois, E. D.

Oct. 20, 1980.

E. James Gildea, Schwartz & Freeman, Chicago, Ill., for plaintiff.

Alan M. Levin, Dorfman, Cohen, Laner & Muchin, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

Melba Goodman, a former employee of Moraine Valley Community College [MVCC], has filed the present action against the Board of Trustees of Community College District 524 and James D. Koeller, President of Moraine Valley Community College. The Board of Trustees is the governing board of Moraine Valley Community College. The plaintiff's complaint sets forth three causes of action against both defendants: (1) Count I asserts a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging employment discrimination on account of sex; (2) Count II presents a claim under the Age Discrimination in Employment Act of 1967 [ADEA], 29 U.S.C. § 621 *et seq.*, alleging employment discrimination on account of age; and (3) Count III sets forth a state law claim for breach of an employment contract. Federal jurisdiction with respect to Count III is founded upon the doctrine of pendent jurisdiction.

Presently before the court are the defendants' various motions for dismissal and/or summary judgment, and certain motions to strike.

## FACTS

The plaintiff is a female born on October 20, 1920. She was hired by the Board of Trustees of MVCC in October, 1969. In 1970, she was appointed to the position of Assistant Dean of Admissions and Records. In September of 1978, the position of Associate Dean of Admissions and Records became vacant. In her complaint, Ms. Goodman contends that the defendants passed over her and offered this position to a younger male whose qualifications were inferior to those of the plaintiff.

The complaint further alleges that this discriminatory appointment violated the policy and procedures adopted by the Board of Trustees in their written Affirmative Action Program adopted in 1975. In said Affirmative Action Program, the Board of Trustees declared that factors of sex and age would not count against the promotional opportunities of any faculty member. According to the plaintiff, this policy was violated when the defendants refused to promote her to the position of Associate Dean. The plaintiff also contends that the defendants violated certain Affirmative Action Program procedures when refusing her the opportunity to apply for the position of Associate Dean.

Soon after the allegedly discriminatory appointment at issue was made, the plaintiff submitted her resignation to the MVCC (Complaint ¶ 10; Defendants' Exhibit III).

In her complaint, the plaintiff alleges that, following this incident, she filed charges of sex discrimination in May of 1979, with both the Illinois Fair Employment Practices Commission [FEPC] and the Equal Employment Opportunities Commission [EEOC]. The FEPC investigated her charge and found "substantial evidence" of sex discrimination in the denial of promotion, but not "substantial evidence" to indicate that the plaintiff's voluntary resignation from the MVCC amounted to a constructive discharge (Plaintiff's Exhibit B; Defendants' Exhibit II). On February 25, 1980 the EEOC, without conducting an independent investigation of the charges, issued a notice of right to sue (Plaintiff's Exhibit C).

Regarding her ADEA claim, on March 7, 1979 Ms. Goodman filed a complaint with the United States Department of Labor alleging that age discrimination was a factor in her being denied the opportunity for promotion to the position of Associate Dean. On May 7, 1979 the EEOC (following an administrative reorganization) issued a notice to the plaintiff stating that, because conciliation efforts had failed, she could commence suit under the ADEA.

The present action was commenced on April 16, 1980.

## I. *The Title VII Count*

The defendants have raised in their motions to dismiss and/or for summary judgment two jurisdictional and procedural defenses to Count I, both of which are premised upon the plaintiff's failure to comply with certain requirements of Title VII. In addition, they challenge the availability of compensatory and punitive damages under Title VII. Each of these defenses will be considered separately.

### A. *Definition of "Employer" under Title VII*

Defendant Koeller moves for dismissal, pursuant to Rule 12(b)(1), Fed.R.Civ.P., on the ground that he is exempt from liability under Title VII because he is not an employer, as that term is defined in 42 U.S.C. § 2000e(b).

Section 2000e(b) defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, *and any agent of such a person ...*" (emphasis added). The 1972 amendments to Title VII extended the definition of "person" to include "governments, government agencies, [and] political subdivisions," 42 U.S.C. § 2000e(a). Pursuant to the clear language of the statute, therefore, if the Board of Trustees is an employer and Koeller was its agent, for the purposes of this litigation he also would be an employer who could be held accountable for any statutory violations. *Kelly v. Richland School District 2*, 463 F.Supp. 216, 218 (D.S.C.1978). As regards this issue, defendant Koeller does not dispute that the Board of Trustees is an employer. Rather, he appears to be contending that he was not the Board's agent.

■ Evidentiary materials submitted to the court provide facts from which defendant Koeller's agency relationship with the Board of Trustees can reasonably be inferred. In this respect, plaintiff's Exhibit B is of considerable significance. Exhibit B reveals that the Board of Trustees had specifically authorized President Koeller to make hiring recommendations within his administration. Accordingly, when actually making those initial hiring decisions, defendant Koeller likely was acting as an agent for the Board, and as such was an employer for the purposes of Title VII.

Other courts have found an agency relationship to lie in similar factual settings. In *Schaefer v. Tannian*, 394 F.Supp. 1128, 1132 (E.D.Mich.1974), the court held that officials of the Detroit Police Department charged with the operation of the Department and with responsibility for its hiring and assignment practices were "agents" coming within the provisions of the statute. In *Kelly, supra*, one of the defendants, the administrative superintendent of the school district, moved for dismissal on grounds virtually identical to those now being raised by defendant Koeller. The court, however, found the administrative superintendent to be an "agent".

This court accordingly, because it believes for purposes of said motion that he may have been the Board of Trustees' agent, will deny this motion to dismiss defendant Koeller.

### B. *Motion to Dismiss Unnamed Defendant*

The defendants also argue that this court lacks subject matter jurisdiction under Title VII with respect to defendant Koeller because he was not named as a respondent in plaintiff Goodman's right to sue letter. In this regard, the statute provides that "a civil action may be brought against [any] respondent named in the [EEOC] charge ..." 42 U.S.C. § 2000e–5(f)(1). In her complaint before the FEPC–EEOC, Ms. Goodman named as respondent Moraine Valley Community College (Defendants' Exhibit I). The EEOC's notice of right to sue letter also names only MVCC as respondent (Plaintiff's Exhibit C). In this suit, however, plaintiff Goodman has added President Koeller as a defendant.

■ The defendants assert that the plaintiff's failure to charge Koeller before the EEOC deprives this court of subject matter jurisdiction with respect to him. In

this regard, the defendants correctly state the general rule that, before a defendant may properly be sued under Title VII, he first must be administratively charged. *Mickel v. South Carolina State Employment Service*, 377 F.2d 239 (4th Cir. 1967), *cert. denied*, 389 U.S. 877, 88 S.Ct. 177, 19 L.Ed.2d 166 (1967). This requirement has the two–fold purpose of providing notice to the charged party, and of insuring that all relevant parties are brought before the EEOC so that the agency may attempt to secure voluntary compliance with the statute.[1] *Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969). To allow a plaintiff to bypass the agency and proceed directly in court against an uncharged party thus would frustrate at least this latter purpose of the Act.

An exception to the general rule that a charge must precede suit against a defendant, though, is found in *McDonald v. American Federation of Musicians*, 308 F.Supp. 664, 669 (N.D.Ill.1970), where the plaintiff brought an EEOC charge against a union local for the discriminatory collection of union fees. In his judicial complaint, the plaintiff in *McDonald* added the union's recording secretary as a defendant. The recording secretary moved for dismissal on the ground that he had not been administratively charged. The court, however, held that because the defendants were "substantially identical", the statute's policy of providing notice to the charged party for the purpose of negotiation had been substantially met. In so concluding, the court stated:

> Here the defendant, Nye, is the Recording Secretary of Local 10–208. He is subject to the provisions of Title VII and *any notice and investigation of the charges against Local 10–208 must have included him since it was through him that the allegedly discriminatory fees*

were collected. We therefore conclude that no useful purpose would be served by requiring the plaintiffs to have proceeded against him before the EEOC and the Court will therefore not require a futile act (emphasis added).

■ In the case at bar, the court believes that the plaintiff's complaint, when read in conjunction with evidentiary materials submitted by both sides, supports her contention that the defendants in this suit also are substantially identical.

In her complaint, the plaintiff alleges that the defendants discriminated against her by appointing a less qualified male to the post of Associate Dean of Admissions and Records (¶¶ 20, 24). Plaintiff's Exhibit C is a letter from the MVCC's attorney to the plaintiff's attorney, dated December 18, 1978, written in response to Ms. Goodman's request on December 1, 1978 for a hearing regarding this allegedly discriminatory appointment (Plaintiff's Exhibit A). The December 18, 1978 letter reveals how the challenged appointment was made:

> My reading of the policy [of the Affirmative Action Program] finds that the only possible section to apply would be that dealing with Promotion of Staff. However, due to the fact that this was a reorganization of college personnel the procedures suggested for a job opening cannot be strictly followed but must be adapted to meet the exigencies of the College. *The President [Koeller] did in fact recommend that certain personnel be switched from their present jobs to other positions, such recommendations occurring after consultation with other members of the College staff. Ultimately the Board of Trustees approved the changes recommended by the President* (emphasis added).

This letter indicates clearly that the defendants are "substantially identical" with-

---

1. An actual attempt by the EEOC to eliminate an unlawful employment practice, however, is not a jurisdictional prerequisite to suit. Requirements of the statute are satisfied if the EEOC is given the opportunity to negotiate with a view toward obtaining voluntary compliance. *Stebbins v. Nationwide Mutual Insur-*

*ance Co.*, 382 F.2d 267, 268 (4th Cir. 1967), *cert. denied*, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968). In the case at bar, it appears from the record that the FEPC investigated the sex discrimination charge, but the EEOC did not (Plaintiff's Exhibits B, C.).

in the rule laid down in *McDonald*. From said letter, it is apparent that an investigation of the charges made against the Board of Trustees could not reasonably have been carried on outside the President's office. The Board of Trustees, moreover, admits to having acted through the President when it made its allegedly discriminatory hiring decision.

The defendants claim, however, that application of the "substantial identity" test in the present cause would be inappropriate because President Koeller had no power to negotiate with the EEOC. In this regard, they direct the court's attention to *Kelly v. Richland School District 2*, 463 F.Supp. 216 (D.S.C.1978). The plaintiff in *Kelly* was a black assistant principal who, it was alleged, had been denied a promotion to the position of principal on account of his race. In his EEOC charge, he named as respondent only the Richland School District. In his judicial complaint, however, he added as a defendant the local Board of Trustees. One fact relied upon by the *Kelly* court in finding a "substantial identity" between the school district and the Board of Trustees was a South Carolina statute which vested the initial power to select a candidate for principal in the defendant Trustees. The defendants herein argue that President Koeller, unlike the Board of Trustees in *Kelly*, had no power under Illinois law to make initial hiring decisions. To the contrary, under Illinois law Boards of Trustees of the various community colleges are given sole authority to employ personnel. Ill.Rev.Stat. ch. 122, § 103–42. That being so, the defendants argue, President Koeller is a "mere employee" of the college.

In the case at bar, the court believes that, although the Illinois statute vests sole power to employ personnel in the Board of Trustees, the MVCC Board did not in actuality always act independently of the college President. Plaintiff's Exhibit C demonstrates that, as regards the MVCC, the President's word carries great weight in hiring decisions. On the basis of this document, therefore, the court finds that President Koeller would have had the ability to influence negotiation attempts by the EEOC.

The defendants also contend that it would be unfair to subject President Koeller to suit under the "substantial identity" test when no evidence exists that he either "knew or should have known that his conduct might be the subject of inquiry." *Hanshaw v. Delaware Technical and Community College*, 405 F.Supp. 292, 296 (D.Del. 1975); *Jackson v. University of Pittsburgh*, 405 F.Supp. 607, 616 (W.D.Pa.1975). The court, however, believes this notice objection to be without merit. During the course of negotiations between the MVCC and the FEPC, the college's attorney on January 22, 1980 made a written offer of conciliation with the FEPC (Defendants' Exhibit 2). Defendant Koeller received a copy of this letter. Accordingly, under these circumstances, where defendant Koeller knew of an agency investigation into a hiring appointment that was made upon his recommendation, the court believes that he was a person who "knew or should have known that his conduct might be the subject of inquiry." *Hanshaw, supra.*

In summary, with respect to this motion of the defendants, as Judge Will noted in *EEOC v. Rinella and Rinella*, 401 F.Supp. 175, 188 (N.D.Ill.1975), although the court cannot discern what advantage will be gained by adding defendant Koeller, it will permit suit to proceed against him at this time.

## C. *Motion to Strike*

Defendants also have moved to strike ¶ 28 of the plaintiff's complaint, and those portions of her second claim for relief seeking (1) punitive damages and (2) damages for emotional stress. Plaintiff Goodman concedes in her memorandum in opposition to this motion that punitive damages are inappropriate under Title VII. *Peterson v. Lehigh Valley District Council*, 453 F.Supp. 735 (D.C.Pa.1978). She further admits in said memorandum that recovery for emotional injury and suffering is not permitted under the statute. *Plummer v. Chicago Plumber's Local 130*, 452 F.Supp. 1127, 1141 (N.D.Ill.1978).

■ In light of the above, this motion of the defendants to strike will be granted. Accordingly, ¶ 28 of the plaintiff's complaint, and those portions of her second claim for relief which allude to physical and mental suffering, are ordered stricken.

## II. *The ADEA Count*

The defendants also have raised in their pending motions several jurisdictional and procedural defenses to Count II, which are premised upon the failure of the plaintiff to comply with the requirements of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* In addition, they challenge certain items of alleged damages. Each of these defenses again will be considered separately.

A. *Failure to File a Charge of Age Discrimination with the Appropriate State Agency*

■ Section 14(b) of the ADEA, 29 U.S.C. § 633(b), provides that a suit is barred unless state proceedings have been commenced and 60 days have passed. That section, however, contains two qualifications: (1) there must be a state law against age discrimination; and (2) there must be a state authority charged with granting or providing relief from such discrimination. *Bertrand v. Orkin Exterminating Co.*, 419 F.Supp. 1123 (N.D.Ill.1976).

The defendants claim that plaintiff Goodman has failed to comply with § 633(b). It is their contention that an Illinois law exists prohibiting age discrimination in employment. Ill.Rev.Stat. ch. 48, §§ 881–7, and an Illinois statute likewise provides relief to victims of age discrimination, Ill.Rev.Stat. ch. 14, § 9. The plaintiff, in response, argues that Illinois lacks the state remedies contemplated by § 633(b).

The court finds *Bertrand v. Orkin Exterminating Co., supra* to be dispositive as to this motion of the defendants. In *Bertrand*, the defendant employer moved to dismiss on the same ground that the present defendants now rely, i. e. failure to exhaust a state administrative remedy. The court there examined the alleged en-

forcement statute, Ill.Rev.Stat. ch. 14, § 9 (the Attorney General statute), and concluded that it did not authorize the Attorney General to enforce the Illinois age discrimination act, Ill.Rev.Stat. ch. 48, §§ 881–7. The court accordingly held that, in the absence of an Illinois statutory remedy against age discrimination, the plaintiff's suit was not barred under the ADEA.

The Supreme Court's decision in *Oscar Mayer and Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), moreover, does not, as the defendants contend, alter the *Bertrand* holding. The Court in *Oscar Mayer* held only that resort to administrative remedies in deferral states, i. e. states with agencies empowered to remedy age discrimination, was mandatory. The *Bertrand* court held that Illinois is not a deferral state under § 633(b).

Accordingly, for the reasons stated above, the defendants' motion to dismiss on this ground is denied.

B. *Definition of "Employer" under the ADEA*

Defendant Koeller has moved, pursuant to Rule 12(b)(1), Fed.R.Civ.P., for dismissal of this count on the ground that he is not an employer under the ADEA and, therefore, is exempt from liability under the statute. Similar statutory considerations to those which led the court to deny defendant Koeller's motion to dismiss on this ground under Title VII, however, also apply here. President Koeller is subject to suit under the ADEA because, as an agent, he is an employer within the meaning of 29 U.S.C. § 630(b).

■ Section 630(b) defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ... Also included in the definition of "employer" are (1) *any agent of such a person,* and (2) a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State ..." (emphasis added).

This court has previously stated its reasons for finding that defendant Koeller is an "agent" of the MVCC Board of Trustees. As such an "agent", as is also true under Title VII, he is an "employer" within the meaning of the ADEA. That being so, defendant Koeller's motion to dismiss on this ground is denied.

C. *Motion to Dismiss Unnamed Defendant under the ADEA*

The defendants argue further with respect to the plaintiff's ADEA claim that, because Ms. Goodman failed to administratively charge him in her complaint to the Department of Labor, as is affirmatively required under Title 29 U.S.C. § 626(d), this court lacks subject matter jurisdiction over defendant Koeller. 29 U.S.C. § 626(d) requires as a prerequisite to the commencement of suit that a 60 day notice of intent to file suit be given to the Secretary of Labor, who must then "promptly notify all persons named therein as *prospective defendants* in the action and ... promptly seek to eliminate any unlawful practice by informal methods of conciliation, conference and persuasion" (emphasis added). Here, as was true with her Title VII claim, plaintiff Goodman filed federal age discrimination charges only against the MVCC, and not against defendant Koeller (Plaintiff's Exhibit D).

The plaintiff's response to this motion of defendant Koeller is that the "substantial identity" exception to the Title VII charging requirement also is available under the ADEA. The ADEA, however, does not by its terms provide for such an alternative method of satisfying the Department of Labor filing prerequisites. This court, moreover, has been unable to find any judicial recognition of a "substantial identity" exception under the ADEA.

■ Several factors, though, persuade the court that to do as the plaintiff urges, and interpret 29 U.S.C. § 626(d) in light of its Title VII counterpart, 42 U.S.C. § 2000e–5(f)(1), would not be inappropriate. Application of the "substantial identity" exception to plaintiff Goodman's ADEA claim, in

addition, appears under the circumstances to be warranted.

That Title VII and the ADEA are similar in nature and purpose has been recognized by the courts. *Hodgson v. First Federal Savings and Loan Ass'n.*, 455 F.2d 818, 820 (5th Cir. 1972). The ADEA and Title VII share a common purpose, the elimination of discrimination from the workplace. *Oscar Mayer and Co. v. Evans, supra.* The administrative charging requirements of the two Acts also are directed at achieving the same end, i. e. affording the relevant administrative agency the opportunity to obtain voluntary conciliation. *Compare Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 720 (7th Cir. 1969) (Title VII) *with Burgett v. Cudahy Co.*, 361 F.Supp. 617, 621 (D.Kan.1973) (ADEA). In recognition of the two Acts' similarities, other courts have cited Title VII cases as authority on ADEA issues involving failures to comply with the charging requirements of 29 U.S.C. § 626(d). *Travers v. Corning Glass Works*, 76 F.R.D. 431, 434 n.10 (S.D.N.Y.1977); *Burgett v. Cudahy Co., supra* at 622.

In light of these factors, the court believes itself justified in both borrowing the "substantial identity" exception from the Title VII case law and applying it to deny this motion to dismiss of defendant Koeller. Regarding the merits of defendant Koeller's motion, any reasonable investigation of the alleged discriminatory act under discussion, i. e. the hiring of a *younger*, less–qualified person as Associate Dean, would have had to involve President Koeller. This is so because, for those reasons already stated, the identity between the Board of Trustees and President Koeller is quite substantial. To hold under these circumstances that plaintiff Goodman's failure to name defendant Koeller in her complaint to the Department of Labor must be dispositive with respect to her present pleading would, in the court's opinion, be inappropriate.

Accordingly, this motion of defendant Koeller is denied.

D. *Motion to Strike*

For the reasons stated previously in this regard, the defendants' motion to strike

¶ 28 of the plaintiff's complaint, and those portions of her second claim for relief seeking (1) punitive damages, and (2) damages for emotional distress, is granted. *Brin v. Bigsby and Kruthers*, 19 F.E.P. Cases 415, 416 (N.D.Ill.1979) (Bua, J.).

■ The plaintiff, however, is entitled under Rule 15(a), Fed.R.Civ.P., to amend her pleadings once as a matter of right at any time before a responsive pleading is served. Accordingly, as a motion to dismiss and/or strike is not a responsive pleading, *Osierko v. South Western Horizons, Inc.*, 60 F.R.D. 365 (N.D.Ill.1973), plaintiff Goodman may still amend her prayer for relief in her second claim to include those liquidated damages available to her under the ADEA. *Brin v. Bigsby and Kruthers, supra.*

### III. Breach of Employment Contract under Illinois Law

Recovery is sought by the plaintiff in this count for an alleged breach on the part of the defendants of her employment contract with the MVCC. Jurisdiction is claimed to lie under the doctrine of pendent jurisdiction. The court will assume at this time, without deciding, that it could properly exercise pendent jurisdiction over this claim of the plaintiff. *United Mineworkers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Such will be done because the court believes that the plaintiff's allegations in this respect are insufficient to state a claim upon which relief can be granted. As that is so, the defendants' motion to dismiss, Rule 12(b)(6), Fed.R. Civ.P., will be granted.

The plaintiff alleges in support of her contract claim that the defendants breached the MVCC's written employment contracts with her for the years 1977–78 and 1978–79. These written contracts are incorporated as Exhibits E and F to her complaint. With respect to this claim, the plaintiff first contends that the Affirmative Action Program adopted by the Board of Trustees in May, 1975 was expressly incorporated into these written contracts. She next argues that the alleged contract breach occurred when the defendants failed·to comply with the terms of their Affirmative Action Program and hired a younger, less–qualified male as

Associate Dean of Admissions and Records. Since that alleged breach occurred "on or about September, 1978", however, the only contract which could have been violated is the one designated as Exhibit F to the complaint, which was to have covered the employment term of July 1, 1978 through June 30, 1979.

■ The defendants' response to this claim of the plaintiff is that Ms. Goodman cannot recover on the written employment contract designated as Exhibit F because she never accepted it. An examination of the contract shows clearly that the document would not become binding on the Board of Trustees until the plaintiff signed it. This she failed to do. Accordingly, since this purported contract, as a matter of law, constituted no more an offer to contract, the defendants' motion to dismiss this count of the complaint on the ground that it fails to state a claim is granted. This dismissal, however, will be without prejudice, and the plaintiff is given leave to amend her complaint as it pertains to this claim.

■ Under the Federal Rules of Civil Procedure, the purpose of a complaint is to state, not prove, a claim. Dismissal is only warranted when it appears to a legal certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim presented. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Where, however, the plaintiff's cause of action arises out of a contract which has been attached to the complaint as an exhibit, and where such contract shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate. *Jacksonville Newspaper Printing Pressmen and Assistants' Union No. 57 v. Florida Publishing Co.*, 340 F.Supp. 993, 995 (M.D.Fla.1972), *aff'd*, 468 F.2d 824 (5th Cir.), *cert. denied*, 411 U.S. 906, 93 S.Ct. 1531, 36 L.Ed.2d 196 (1973).

In the case at bar, the plaintiff has incorporated into her complaint the 1978–79 written employment contract. That contract provides in pertinent part:

The signature of the employee in the space provided below and the return of

two copies of the contract to the Personnel Office within 10 days of the date of the contract confirm the employee's acceptance of the position and terms of the contract. Failure to sign and return the copies within the prescribed time constitutes a rejection of the contract by the employee.

Plaintiff Goodman admittedly did not sign the contract at issue.

 Under Illinois law, employment contracts are subject to the same general rules of construction as are other contracts. *Evaskus v. Neff, Kohlbusch and Bissell, Inc.*, 40 Ill.App.2d 416, 189 N.E.2d 542 (1963). With respect to written agreements, the Illinois courts have held that "where there is no ambiguity in the terms of a written contract, the instrument itself affords the only criterion of the parties intention." *Bank of Marion v. Robert "Chick" Fritz*, 9 Ill.App.3d 102, 291 N.E.2d 836, 839 (1973). Illinois law also makes clear that where "parties make the reduction of an agreement to writing and its signature by them a condition precedent to its completion, it will not be a contract until it is done." *Baltimore and Ohio S.W.R.R. Co. v. The People*, 195 Ill. 423, 63 N.E. 262, 263 (1902); *S. N. Nielsen Co. v. National Heat and Power Co., Inc.*, 32 Ill.App.3d 941, 337 N.E.2d 387, 391 (1975).

In the light of this Illinois law, the court finds that Count III must be dismissed for failure to state a claim. Exhibit F, having been signed only by the defendants, is very simply not an enforceable written contract. *Wetenkamp v. Billigh*, 27 Ill.App. 585, 589 (1888).

The defendants' motion to dismiss President Koeller from Count III, since it has not been opposed by the plaintiff, will be granted. This dismissal, moreover, for that reason will be with prejudice.

IV. *Motion to Strike ¶ 23 and Exhibit B attached to the Complaint.*

 The defendants have moved to strike those findings of the Illinois FEPC which are set forth in ¶ 23 of the complaint, together with the FEPC's "Notice of Substantial Evidence" incorporated as Exhibit

B to ¶ 23, on the grounds of relevancy and prejudice. They cite as authority for the striking of the exhibit *Wells v. Bank of America*, 7 F.E.P. Cases 1168 (N.D.Cal. 1972), and as authority for the striking of any allegation as to an agency finding, *Butler v. Local No. 4 and Local No. 268, Laborers' Int'l Union*, 308 F.Supp. 528, 535 (N.D. Ill.1969) and *Hart v. Buckeye Industries, Inc.*, 46 F.R.D. 61, 7 F.E.P. Cases 170 (S.D. Ga.1968). The reasoning found in these and other decisions persuades this court that this motion of the defendants should be granted for reasons of relevancy.

"The only Commission action in [employment practices] cases which has any relevancy in subsequent litigation [brought] in the federal courts is the necessity of notice to the person claiming to be aggrieved that voluntary compliance by the employer was not obtained." *Butler, supra* at 534; *Hart*, 46 F.R.D. 61, 7 F.E.P. Cases at 170. In the instant case, ¶ 23 and its attachment are irrelevant for two reasons. The first is jurisdictional in nature–the challenged allegations are not necessary for the maintenance of this suit; ¶¶ 22 and 25 of the complaint allege the necessary jurisdictional facts. *Moss v. Lane Co.*, 50 F.R.D. 122, 127 (W.D.Va.1970). The FEPC decision regarding "substantial evidence", in addition, would be inadmissible at trial. The defendants are, in this regard, entitled to a trial *de novo*, which is to be separate from any prior agency determinations. *King v. Georgia Power Company*, 295 F.Supp. 943, 1 F.E.P. Cases 357 (N.D.Ga.1968).

Plaintiff argues, nevertheless, that the FEPC finding is relevant to the issue of wilful and wanton damages, which may be available to her under her ADEA claim. As the defendants point out, though, the FEPC's finding on the sex discrimination charge can hardly be considered relevant to the plaintiff's age discrimination claim. The court also has been unable to find any authority to support plaintiff Goodman's other argument, that the defendants' refusal to consider her appointment for the Associate Dean post after the FEPC proceeding constitutes a "successive discriminatory act *that is relevant to the issue of damages*" (court's emphasis).

Accordingly, for the reasons stated above, ¶ 23 of the plaintiff's complaint, and its related attachment, Exhibit B, are ordered stricken.

### V. *Motion to Strike the Jury Demand under Title VII*

The plaintiff having conceded in her memorandum in opposition that she is not entitled to a jury trial under Title VII, this motion of the defendants is ordered granted, and plaintiff Goodman's jury demand accordingly is ordered stricken.

### CONCLUSION

In summary, for the reasons stated above, the following is ordered:

1. Defendants' motion to dismiss the plaintiff's Title VII claim as to defendant Koeller for failure to satisfy the Act's charging requirements, and because Koeller is not an "Employer" within the meaning of the Act, is DENIED.

2. Defendants' motion to dismiss the plaintiff's ADEA claim as to defendant Koeller for failure to satisfy the Act's charging requirements, and because Koeller is not an "Employer" within the meaning of the Act, is DENIED.

3. Defendants' motion to dismiss the plaintiff's ADEA claim for failure to exhaust state administrative remedies, is DENIED.

4. Defendants' motion to strike ¶ 28 of the Complaint, and the plaintiff's requests in her "First Claim for Relief" for punitive damages and damages for emotional distress, is GRANTED.

5. Defendants' motion to strike ¶ 28 of the Complaint, and the plaintiff's requests in her "Second Claim for Relief" for punitive damages and damages for emotional distress, is GRANTED. This action on the part of the court, however, is without prejudice to plaintiff Goodman's ability to amend her complaint to seek as relief those liquidated damages which may be available to her under the ADEA.

6. Defendants' motion to dismiss the plaintiff's state law employment contract claim for failure to state a claim is GRANT-ED. Rule 12(b)(6), Fed.R.Civ.P. This dismissal, however, is without prejudice.

7. Defendants' motion to dismiss the plaintiff's state law employment contract claim for lack of pendent jurisdiction is DENIED as moot.

8. Defendants' motion to dismiss the state law employment contract claim as to defendant Koeller is GRANTED, said dismissal to be with prejudice.

9. Defendants' motion to strike ¶ 23 of the Complaint and Exhibit B is GRANTED.

10. Defendants' motion to strike the plaintiff's jury demand with respect to Title VII is GRANTED.

With respect to those portions of Ms. Goodman's pleading that have been stricken or dismissed without prejudice, the plaintiff is given to November 14, 1980 to appropriately amend her Complaint.

IT IS SO ORDERED.