**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**KLOSTER CRUISE LIMITED, Defendant.**

**No. 93–2465–CIV–MOORE.**

United States District Court, S.D. Florida, Miami Division.

May 12, 1995.

Carla J. Vogel, Gedety Serralta, and Rachel H. Shonfield, E.E.O.C., Miami, FL, for plaintiff.

Stephen M. Corse and Beth Jarrett Moffitt, White & Case, Miami, FL, for defendant.

## AMENDED ORDER

K. MICHAEL MOORE, District Judge:

Are a foreign corporation's operations within the United States subject to the Age Discrimination in Employment Act's prohibition of age discrimination?

### I.  Factual background [1]

Defendant Kloster Cruise Limited ("Kloster Cruise") is a Bermuda subsidiary of a Norwegian parent corporation. In addition to its overseas operations, Kloster Cruise maintains offices in Florida. Joseph Burger, Hela Campbell, Renato Ferreira, Kathy Hayes and Edward Wilcoxson, all United States citizens over the age of 40, worked in those Florida offices as District Sales Managers (collectively, the "DSMs").

Kloster Cruise terminated the DSMs' employment in 1991, allegedly as part of a reduction in force. Believing that the DSMs had been terminated because of their age, the United States Equal Employment Opportunity Commission ("EEOC") filed suit against Kloster Cruise on their behalf as well as that of all others similarly situated. The

---

1. The following facts are undisputed.

EEOC's complaint contends that the terminations violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634.

Kloster Cruise has interposed the affirmative defense that, as a foreign corporation, it is not subject to the ADEA's prohibition of discrimination. The parties have filed cross-motions for summary judgment on this defense.[2]

## II. Discussion

Section 623(a) of the ADEA sets forth the ADEA's primary bar of age discrimination. It provides that "[i]t shall be unlawful for an *employer*":

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a) (emphasis added). An "employer" is "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." *Id.* at § 630(b). There is no dispute that Kloster Cruise is an "employer" under this definition.

▮ Despite this, Kloster Cruise contends that it is not subject to section 623(a)(1) because it is incorporated in a foreign country and is not controlled by a United States company. Section 623(h)(2) of the ADEA is the basis for this surprising claim. That provision states: "The prohibitions of [section 623(a) ] shall not apply where the employer is a foreign person not controlled by a United States employer." *Id.* at § 623(h)(2). In Kloster Cruise's view, section 623(h)(2) plainly exempts it from section 623(a).

The EEOC disagrees. It argues that section 623(h)(2) applies only to the *overseas operations* of foreign companies. Since the DSMs in this case worked in the United States, the EEOC concludes that they were protected by the ADEA regardless of Kloster Cruise's foreign status.

The problem with the EEOC's position is that section 623(h)(2) makes no mention of overseas operations. Because of this omission, the few courts considering section 623(h)(2) have split on whether the ADEA is so limited. *Compare Robinson v. Overseas Military Sales Corp.,* 827 F.Supp. 915, 920 (E.D.N.Y.1993), *aff'd,* 21 F.3d 502 (2d Cir. 1994) (foreign employer not subject to the ADEA where American citizen worked in United States); *Mochelle v. J. Walter Inc.,* 823 F.Supp. 1302, 1309 (M.D.La.1993), *aff'd w/o opin.,* 15 F.3d 1079 (5th Cir.1994) (same); *with Helm v. South African Airways,* 44 Fair.Empl.Prac.Cas. (BNA) 261, 43 Empl. Prac.Dec. ¶ 37,303, 1987 WL 13195 (S.D.N.Y. 1987) (section 623(h)(2) did not exempt foreign company from the ADEA where employee was American citizen working in United States).

The EEOC has promulgated policy guidance interpreting section 623(h)(2) in the manner it advocates here today. This guidance states that "[t]he ADEA applies to an employer that is a foreign firm operating inside the United States unless a treaty is involved." EEOC Policy Guidance, N–915.039, Empl.Prac.Guide (CCH) ¶ 5183, at 6536 (March 3, 1989). It continues:

*Example*—Arthur, a 55 year old resident alien of the U.S., works for a foreign corporation operating in Ohio. Arthur files a charge with the [EEOC] because his foreign employer has a firm policy requiring all persons over 56 to retire. Arthur

---

**2.** Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To obtain summary judgment, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

should obtain relief since the ADEA generally covers the employment practices of a foreign employer inside the United States. *Id.*

■■■ Because the EEOC is charged with administering the ADEA, *Passer v. American Chem. Soc.*, 935 F.2d 322, 329 (D.C.Cir. 1991), its interpretation of that statute ordinarily is entitled to great deference. *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1060–61 (11th Cir.1994). A two-step process determines whether this Court should adopt the EEOC's interpretation of section 623(h)(2). *Dawson v. Scott*, 50 F.3d 884, 886 (11th Cir.1995). If the section's text is clear, then the Court must give full effect to the unambiguously expressed intent of Congress, regardless of any contrary interpretation by the EEOC. *Id.* If the section is silent or ambiguous on the issue at hand, the Court must defer to the EEOC's interpretation if it is reasonable. *Id.* at 886–87. "Agency interpretation is reasonable and controlling unless it is arbitrary, capricious, or manifestly contrary to [a] statute." *Id.*

Proceeding to the first step of this process, the Court observes that section 623(h)(2) straightforwardly exempts foreign companies[3] from the anti-discrimination rules of section 623(a). Section 623(h)(2) is unqualified: it does not limit the exemption to the overseas operations of such foreign employers.

■■ "In interpreting the language of a statute, however, [courts] do not look at ... one provision in isolation, but rather look to the statutory scheme for clarification and contextual reference." *United States v. McLemore*, 28 F.3d 1160, 1162 (11th Cir.

1994). "Just as a single word cannot be read in isolation, nor can a single provision of a statute." *Smith v. United States*, — U.S. —, —, 113 S.Ct. 2050, 2056, 124 L.Ed.2d 138 (1993). Related provisions in the same statute are probative of a particular section's meaning. *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–22, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991); *see, e.g., DAE Corp. v. Engeleiter*, 958 F.2d 436, 439 (D.C.Cir.1992).

Closely related sections of the ADEA indicate that section 623(h)(2)'s exemption is limited to overseas operations. Section 623(h)(2) was included as part of the Older Americans Act Amendments of 1984 (the "OAAA"), Pub.L. 98–459, 98 Stat. 1767. Although the OAAA largely reauthorized and amended the Older Americans Act, 42 U.S.C. §§ 3001–3058ee, it made "two minor changes in the Age Discrimination in Employment Act of 1967." S.Rep. 98–467 at 2; 1984 U.S.C.C.A.N. 2974 at 2975. One of those changes was to "make[ ] provisions of the Act apply to citizens of the United states employed in foreign countries by U.S. corporations or their subsidiaries." *Id.*[4]

The OAAA accomplished this objective through two amendments. First, it amended section 630(f) of the ADEA to redefine the term "employee" to include United States citizens working abroad. 29 U.S.C. § 630(f). This redefinition extended section 623(a) to all employers directly employing United States citizens abroad. *See* 29 U.S.C. § 623(a)(2) & (3); H. Eglit, *Age Discrimination* § 3.26, at 3–118 (1994).[5]

■■ Second, Congress created section 623(h)(1). Section 623(h)(1) provides that, "[i]f an employer controls a corporation whose place of incorporation is in a foreign

---

**3.** Unless otherwise stated, the term "foreign company" refers to a foreign business that is not controlled by a United States employer.

**4.** The other change does not pertain to this proceeding. *See* S.Rep. 98–467 at 2, 1984 U.S.C.C.A.N. 2974 at 2975.

**5.** The expansion of the term "employee" had the effect of overturning *Cleary v. United States Lines, Inc.*, 555 F.Supp. 1251 (D.N.J.1983), *aff'd*, 728 F.2d 607 (3d Cir.1984). *Cleary* held that the ADEA did not apply to Americans working for United States companies abroad because the

ADEA incorporated by reference the Fair Labor Standard Act's ("FLSA"), 29 U.S.C. §§ 201–219, prohibition of extraterritorial application. *Cleary*, 555 F.Supp. at 1258. That prohibition stated that the FLSA did not apply to any "employee" working in a foreign country. 29 U.S.C. § 216(d). The OAAA's explicit inclusion of overseas American workers as "employees" directly undercut this rationale for *Cleary*—a result that Congress intended. *See Age Discrimination and Overseas Americans, 1983: Hearing Before the Subcomm. on Aging of the Sen. Comm. on Lab. and Human Resources*, 98th Cong., 1st Sess. 1–2 (1983) (statement of Sen. Charles Grassley).

country, any practice by such corporation prohibited under [section 623(a)] shall be presumed to be such practice by such employer." *Id.* at § 623(h)(1). This section makes clear that United States companies cannot circumvent the ADEA by employing American workers through foreign subsidiaries.

Read literally, amended section 630(f) would subject a foreign company's *worldwide* operations to the ADEA merely because that company maintained some offices in the United States. Congress was well aware of this problem, *see Age Discrimination and Overseas Americans, 1983: Hearing Before the Subcomm. on Aging of the Sen. Comm. on Lab. and Human Resources,* 98th Cong., 1st Sess. 5, 32 (1983) (statements of Clarence Thomas, William Yoffee), and it added 623(h)(2) to correct it. *See Boureslan v. Aramco, Arabian American Oil Co.,* 892 F.2d 1271, 1279 n. 9 (1990) (King, J., dissenting), *aff'd,* 499 U.S. 244, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). Section 623(h)(2) fine-tuned Congress' extension of the ADEA so that the statute did not govern the foreign operations of foreign companies.

Reading section 623(h)(2) to serve only this limited purpose harmonizes with the OAAA amendments. The sole expressed purpose of the OAAA's amendments of the ADEA was to *extend* the scope of the ADEA, S.Rep. No. 98–467, 98th Cong., 2d Sess. 27 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2974, 3000; *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 258–60, 111 S.Ct. 1227, 1236, 113 L.Ed.2d 274 (1991), not to carve out an entire class of employers for complete insulation from the ADEA. Further, such a reading has only a minimal adverse impact on the ADEA's goal of remedying discrimination. This interpretation of section 623(h)(2) thus is superior to that offered by Kloster Cruise, which makes no sense in the context of the OAAA amendments[6] and which greatly limits the ADEA's scope. *Bailey v. USX Corp.,* 850 F.2d 1506, 1509–10 (11th Cir.1988); *see also Bechtel Construction Co. v. Secretary of Labor,* 50 F.3d 926, 930–31 (11th Cir.1995).

Further, an interpretation of section 623(h)(2) that does *not* limit it to foreign companies' overseas operations would render the ADEA internally inconsistent. Section 623(f)(1) of the ADEA provides that:

It shall not be unlawful for an employer ... to take any action otherwise prohibited under subsection[ ] (a) of this section ... where such practices involve an employee in a workplace in a foreign country, and compliance with such subsection[ ] would cause such employer, or a corporation controlled by such employer, to violate the laws of the country in which such workplace is located.

29 U.S.C. § 623(f)(1). Congress drafted section 623(f)(1)'s exception to ADEA's coverage because it "was cognizant of the well-established principle of sovereignty ... that no nation has the right to impose its labor standards on another country." S.Rep. No. 98–467, 98th Cong., 2d Sess. 27 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2974, 3000. Congress evidently believed that forcing American overseas operations to violate the laws of host countries would violate those countries' sovereignty. In light of its reluctance to do this, it is inconceivable that Congress would have abdicated United States sovereignty by exempting the domestic operations of foreign firms from United States law. Kloster Cruise's interpretation of section 623(h)(2), however, leads to this result.

Consequently, the Court concludes that the ADEA is at least ambiguous as to the meaning of section 623(h)(2). The Court thus proceeds to the second step of reviewing the EEOC's interpretation—namely, determining whether that interpretation is reasonable.

The Court finds that the EEOC's interpretation meets this standard—in fact, it is the interpretation that the Court would have chosen had the EEOC not issued policy guidance. As discussed above, this interpretation best squares with the purpose and context of the OAAA, is consonant with the OAAA's legislative history, and does not unnecessari-

---

**6.** In fact, Kloster Cruise gives no explanation of why Congress would have amended the ADEA in    the extreme manner that it suggests.

ly poke a gaping hole in the ADEA. The EEOC's interpretation thus is not arbitrary, capricious or manifestly contrary to the ADEA. Accordingly, the Court expressly adopts the EEOC's interpretation.

## III. Conclusion

The Court concludes that section 623(h)(2) does not exempt Kloster Cruise from section 623(a). The EEOC's motion for summary judgment on Kloster Cruise's first affirmative defense is **GRANTED,** and that defense is stricken. Kloster Cruise's cross-motion for summary judgment is **DENIED.**